**UNITED STATES of America**

v.

**Edward Terrence ROCHE.**

**Cr. No. 11334.**

United States District Court
D. Connecticut.

Feb. 1, 1965.

Jon O. Newman, U.S. Atty., Howard T. Owens, Jr., Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Paul V. McNamara, Bridgeport, Conn.. for defendant.

ZAMPANO, District Judge.

Defendant, Edward Terrence Roche, moves, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, to suppress certain objects seized by agents of the Federal Bureau of Investigation on September 9, 1964. Indictments for bank robbery, charging violations of 18 U.S.C. §§ 2113(a) and 2113(b), were returned against Roche and co-defendant, Robert William Gorman, on September 18, 1964.

On September 8, 1964, New York detectives arrested Gorman on a narcotics violation. While being interrogated,

Gorman admitted a bank robbery in Connecticut and implicated one "DiBartolo" as his accomplice. Investigation of Gorman's actions revealed he had placed several telephone calls to room #504 at a certain motel in Rockville Centre, New York, prior to his arrest.

Suspecting Gorman may have been in contact with "DiBartolo", federal agents Bjorklund, Duffy, Fuss and Flaherty arrived at the motel at 10:00 A.M. on September 9, 1964 to investigate the lead furnished by Gorman the night before. The motel register revealed room #504 was occupied by a "Mr. Noel", an employee of the "Connor-Noel Sales Company of Houston, Texas." Aware Gorman initially had identified himself to New York detectives as "Mr. Connor of the Connor-Noel Sales Company of Houston", the agents proceeded to room #504 to question the occupant.

Agent Bjorklund knocked on the door, and Roche opened it. It was immediately obvious to the agents that Roche in no way fit the description of "DiBartolo" as given by Gorman. After identifying themselves, the agents asked if they could speak to him, and Roche answered "Come right in, gentlemen."

Roche informed the agents his name was Noel, and he would be glad to cooperate with them. Before any further conversation occurred, Roche went into the bathroom to shave and dress. The agents in no way restrained him or followed him. Ten minutes later Roche rejoined the agents, and he was informed they were investigating a bank robbery involving Robert Gorman, who had identified himself as an employee of the Connor-Noel company. He was told that if he were involved in any way he didn't have to say anything and had the right to counsel. Roche denied knowledge of the robbery and insisted he was a legitimate businessman. He denied knowing Gorman and offered to call "his company" in Texas to determine whether anyone named Gorman worked there. When informed Gorman had telephoned his room, Roche offered the explanation that he had shared the room with a young lady and possibly Gorman had called her.

Roche assumed an attitude of cordial cooperation and conversed amiably with the agents about the sales business for over thirty minutes. He explained he sold educational devices to schools, such as "an apparatus which depicted the structure of atoms and molecules" to be used in science classes. Agent Fuss asked Roche if he had any samples of the apparatus with him. Roche replied that he had samples in his baggage. Fuss then asked Roche if he had "any objection to us looking in your luggage." Roche replied "Be my guest." To this point in the conversation the defendant had successfully convinced the agents he was a reputable businessman.

Agent Duffy opened an attaché case and observed a loaded Magnum in a leather container and packages of money in a snap compartment inside the case. Roche was immediately asked if the contents of the attaché case were his, and he replied they were. The agents thereupon arrested him, and warned him of his constitutional rights. Except for admitting his true name and that he was a parole violator, Roche refused to answer any other questions.

██ Under these circumstances defendant contends he did not freely and voluntarily consent to the search and moves for an order suppressing the use of the items seized from his luggage.

There is no dispute the search was not made pursuant to a warrant and, since the search preceded the arrest, it was not incident to a lawful arrest. The government maintains, however, defendant consented to the search of his luggage deliberately, freely and voluntarily and, therefore, he waived his otherwise constitutionally protected status.

██ Mindful of the necessity to preserve those fundamental safeguards requisite for a free society, courts indulge every reasonable presumption against

waiver of basic constitutional rights. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Thus the government has the burden to prove by clear and positive evidence that the consent to the search was unequivocal and voluntary, free from duress or coercion. United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); United States v. Rivera, 321 F.2d 704 (2 Cir. 1963); United States v. Smith, 308 F.2d 657 (2 Cir.1962), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716. No precise rules capable of automatic application are available. However, it is now generally accepted that courts will view with disapprobation claims of waiver when the consent to search "was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Some cases hold that, except in extraordinary circumstances, consent to a search after officers of the law have identified themselves or after the defendant is placed under arrest is not a voluntary consent, because it is not in accord with common experience and can only be explained by physical or mental coercion. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951); Higgins v. United States, 93 U.S.App.D. C. 340, 209 F.2d 819 (1954); United States ex rel. Holloway v. Reincke, 229 F.Supp. 132 (D.C.Conn.1964); United States v. Gregory, 204 F.Supp. 884 (S.D. N.Y.1962). A review of these cases and similar cases which hold that voluntary consent had not been given, indicates the defendants, although verbalizing a consent to search, were in actuality submitting or acquiescing in an orderly way to the police officials' power and influence. Moreover, in each of these cases the testimony of the law officers on the issue of consent was disputed, and the courts obviously were concerned with weighing the inherent probabilities of the conflicting accounts.

The situation in the instant case is quite different. Here the defendant's ingenuous pose hardly indicates resignation to the badge. From the uncontroverted testimony of the agents it is clear his cooperation was a deliberate charade to dispel suspicion. United States v. Dornblut, 261 F.2d 949 (2 Cir.1958); United States v. Adelman, 107 F.2d 497 (2 Cir.1939); United States v. De Vivo, 190 F.Supp. 483 (E.D.N.Y.1961); Honig v. United States, 208 F.2d 916 (8 Cir. 1953); and Fisher v. United States, 227 F.2d 930 (9 Cir.1955).

Roche possessed contraband, unlike narcotics, not readily disposable. He undoubtedly realized, among other things, that if he encountered law officers and was uncooperative for any reason he would become a subject for surveillance or further law enforcement procedures. This he wished to avoid. Therefore, when the F.B.I. came to his door, he put into effect a well-calculated plan to draw attention away from himself as a parole violator or bank robber. Armed with all the indicia of a respectable businessman, he was confident his stratagem would prevail. With *sangfroid* air and cooperative demeanor he attempted to beguile the agents to distraction. He almost succeeded. The ruse failed when the agents "called" his final play of the bluff: "Be my guest." The defendant cannot now claim he "had his fingers crossed" and invoke a constitutional protection to which he would have been otherwise entitled.

The Court finds the government has sustained its burden, and defendant's consent to the search was freely and voluntarily given. The motion to suppress is denied.