Kenneth MacKENZIE, Petitioner,

v.

Allan L. ROBBINS, Warden, Maine State
Prison, Respondent.

Civ. No. 8–189.

United States District Court
D. Maine, S. D.

Dec. 14, 1965.

Gene Carter, Bangor, Maine, for petitioner.

John W. Benoit, Asst. Atty. Gen., Augusta, Maine, for respondent.

GIGNOUX, District Judge.

The petitioner, Kenneth MacKenzie, was convicted by a jury at the September, 1963 term of the Penobscot County, Maine Superior Court of the crime of breaking, entering and larceny in the nighttime, in violation of Me. Rev.Stat.Ann. ch. 132, § 3 (1954). He was sentenced to 6 to 12 years in the Maine State Prison, and is presently in respondent's custody serving that sentence. Following the affirmance of his conviction by the Supreme Judicial Court of Maine, State v. MacKenzie, 161 Me. 123, 210 A.2d 24 (1965), petitioner has filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq. The sole ground asserted by petitioner on his appeal and in support of his present petition is that there was introduced against him at his trial evidence which was obtained by the police by means of an unreasonable search and seizure in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and which should have been excluded by the trial justice under the rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961). Having presented the federal constitutional question which he now raises to the highest court of the State of Maine, and having received an adverse determination from that court, petitioner has exhausted his available state remedies as required by 28 U.S.C. § 2254, and is entitled to institute habeas corpus proceedings in this Court and to obtain here an independent consideration of the deprivation of federal constitutional right which he asserts. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The parties have stipulated that petitioner's right to habeas relief in this Court be determined, without a further evidentiary hearing, upon the record of the proceedings in the state courts, including the transcript of the testimony presented at the hearing held by the trial justice upon petitioner's pre-trial motion to suppress the challenged evidence, the trial justice's findings and decree denying petitioner's motion, the record of the proceedings at petitioner's trial, and the opinion of the Supreme Judicial Court affirming petitioner's conviction. The parties have also agreed that the trial justice reliably found the relevant facts, after a full and fair hearing, and that his findings of fact, as adopted by the Supreme Judicial Court on appeal, should be accepted by this Court. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Although the evidence presented by petitioner and the state at the hearing upon the motion to suppress was in sharp conflict, the trial justice substantially accepted the state's version of disputed events, which was as follows:

On the night of March 3–4, 1963 the store of one Hikel in Millinocket, Maine,

was forcibly entered, and two six-packs of bottled beer (Budweiser), several wristwatches (1 Admiral and 13 Timex), and a coin collection, consisting of both old and mint coins, among other things, were taken. On the morning of March 4, Officers Rideout and Montgomery of the Millinocket police department in the course of investigating the break, and aware that one Albert, petitioner and another person had been on the street and drinking the previous night, that Albert had broken into the same store in 1957, and that the method of operation of the two breaks was the same, sought Albert for questioning. Learning that Albert was a tenant in Wing's rooming house, the officers went to the rooming house where the landlady showed them to Albert's room. In this room were Albert and petitioner, who was there as a guest of Albert.[1] The time was approximately 8:30 a. m. The officers did not at that time know who, if anyone, was in the room and had no reason to believe that there was contraband or stolen property in the room. They did not have either an arrest warrant or a search warrant; nor did they have sufficient evidence to constitute probable cause to arrest or to obtain a search warrant. Officer Montgomery, at Officer Rideout's order, stationed himself at the rear door of Albert's room. Officer Rideout knocked at the front door of Albert's room, and a voice inside, identified as Albert's, asked "Who is it?" Officer Rideout replied, "Dick Rideout of the Millinocket police department. I would like to talk to you." Albert replied, "Just a minute." Shortly thereafter Albert unlocked the door, swung the door open, and walked to a dresser in the room and picked up a bottle of beer, which he tried to open. Petitioner was in bed and apparently asleep at the time. Officer Rideout entered the room when the door was opened. He then told the other officer to enter, that "It is all right." The other officer entered through a door which was apparently unlocked. There was no force used by either officer. Albert never expressly invited Officer Rideout to enter the room, but Officer Rideout assumed that because Albert unlocked the door and retreated into the room he was extending an invitation to Officer Rideout to enter the room. Neither Albert nor petitioner made any protest to the entry or subsequent search of the room.

Officer Rideout did not make any arrest immediately upon entering the room. He asked Albert and petitioner, whom he knew, if they would come down to the police station. They made no reply. Petitioner started to put on a pair of trousers, and two gold coins fell out of the pocket. The officer observed that the pockets were bulging, and saw on Albert's wrist an Admiral wristwatch answering to the description of one which had been reported stolen in the break. At this point the officers arrested Albert and petitioner and in a subsequent search of the room seized 13 Timex wristwatches, one Admiral wristwatch, part of a six-pack of Budweiser beer, a number of foreign coins, a canvas knapsack and a tool box. This evidence the trial justice refused to suppress before trial and admitted over petitioner's objection at the trial. He ruled that the entry of Officer Rideout into the apartment " * * * was by implied invitation of Albert whose conduct allowed the officer to believe he was being given permission to enter."; that what the officers observed after the entry provided probable cause for the arrest; and that the subsequent search of the apartment was a proper incident to a lawful arrest. Finally, the trial justice specifically found that there was

" * * * no reason to conclude that Albert's will was overcome by fear of authority when he opened the door and admitted Rideout. It appears to me more reasonable to conclude that he realized that there was nothing to be gained by denying the officers entrance and that he might

---

1. At the hearing on petitioner's motion to suppress, Albert, who was named as a co-defendant in the state court proceed-ing, claimed, and was granted, constitutional immunity. He subsequently pleaded guilty.

as well let them in to find the stolen goods, the discovery of which now appeared inevitable anyway."

On appeal, the Supreme Judicial Court affirmed the rulings of the trial justice denying petitioner's motion to suppress before trial and admitting the challenged evidence over his objection at the trial. In affirming petitioner's conviction, the court held that petitioner lacked "standing" to object to the introduction of the evidence at the trial because as a mere guest of Albert he had no "proprietary or possessory rights in the room involved;" but that even if petitioner had standing, it would hold the evidence to have been lawfully received because Officer Rideout's entry of the apartment and the subsequent search were "with Albert's permission, voluntarily given and his volition unaffected by any aura of the law." State v. MacKenzie, supra 161 Me. at 135–136, 210 A.2d at 32.

 This Court recognizes that it should not lightly upset a state court conviction. However, it is persuaded that the Maine court's holdings that petitioner lacked standing, and that even if petitioner had standing, the evidence was lawfully received, are in direct conflict with controlling decisions of the United States Supreme Court; and that petitioner's conviction was obtained by the use of evidence secured by an unlawful search and seizure of which he had the right to complain. Under such circumstances the conviction cannot be permitted to stand. Mapp v. Ohio, supra. While comity requires that a federal district court defer action in a habeas proceeding until the state court has had an opportunity to correct a constitutional violation, after the state court has decided the federal question on the merits against the habeas petitioner, he may turn to the federal court and there relitigate the question. Fay v. Noia, supra 372 U.S. at 420, 83 S.Ct. 822. And when after an independent consideration the federal court concludes that the state court has "misconceived a federal constitutional right", id. at 422, 83 S.Ct. at 840, the federal court is "charged with

the duty of protecting the accused in the enjoyment of his constitutional rights." Id. at 418–419, 83 S.Ct. at 838. The state court's determination is not res judicata in the federal proceeding, Brown v. Allen, 344 U.S. 443, 458, 73 S.Ct. 397, 437, 97 L.Ed. 469 (1953); nor is the federal court to give it "binding weight." Id. at 506, 508, 73 S.Ct. at 445, 447 (opinion of Mr. Justice Frankfurter); Fay v. Noia, supra 372 U.S. at 422, 83 S.Ct. 822. As put by the Supreme Court in Townsend v. Sain, supra 372 U.S. at 318, 83 S.Ct. at 760:

"Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently. The state conclusions of law may not be given binding weight on habeas."

 The issue of petitioner's standing to challenge the legality of the search and seizure under the Federal Constitution is to be decided in accordance with federal law. United States ex rel. Coffey v. Fay, 344 F.2d 625, 628 (2d Cir. 1965); cf. Aguilar v. State of Texas, 378 U.S. 108, 110, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Ker v. State of California, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). According to the rule which governs standing to suppress evidence in a federal prosecution, the defendant must be "aggrieved by [the] unlawful search and seizure." Fed. R.Crim.P. 41(e). This rule "applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.'" Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed. 2d 697 (1960). "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed * * *." Ibid. In the Jones case the

Supreme Court held that the defendant, who, like petitioner here, was a guest in an apartment, had "a sufficient interest in the premises to establish him as a 'person aggrieved' by their search." Id. at 265, 80 S.Ct. at 733. In so holding, the court stated that "anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." Id. at 267, 80 S.Ct. at 734.

The Maine court's conclusion that petitioner, as a guest in Albert's apartment, lacked standing to complain of the search cannot be reconciled with the standard declared and applied by the Supreme Court in Jones. In the present case it is not questioned that petitioner was "legitimately on [the] premises" at the time of the search. The search which disclosed the stolen goods was "directed against" him, as well as Albert. Under the standard of Jones, he could challenge the legality of the search by way of a motion to suppress when the evidence obtained as a result thereof was attempted to be used against him. United States v. Costner, 217 F.Supp. 644, 646 (E.D. Tenn.1963); cf. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951); McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Rosencranz v. United States, 334 F.2d 738 (1st Cir. 1964); id. at 741–742 (concurring opinion of Aldrich, J.).

 Nor can the conclusion of the Maine court that the officers' entry and subsequent search was lawful because made with Albert's permission be reconciled with Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), the facts of which are nearly identical to those of the present case. In the Johnson case the officers had reason to believe that unknown persons were smoking opium in a hotel in Seattle, Washington. On their arrival at the hotel they recognized a strong odor of opium which led them to a certain room. They had no idea who was occupying the room.

"They knocked and a voice inside asked who was there. 'Lieutenant Belland,' was the reply. There was a slight delay, some 'shuffling or noise' in the room and then the defendant opened the door. The officer said, 'I want to talk to you a little bit.' She then, as he describes it, 'stepped back acquiescently and admitted us.' He said, 'I want to talk to you about the opium smell in the room here.' She denied that there was such a smell. Then he said, 'I want you to consider yourself under arrest because we are going to search the room.' The search turned up incriminating opium and smoking apparatus, the latter being warm, apparently from recent use." Id. at 12, 68 S.Ct. at 368.

The evidence thus seized the district court refused to suppress before trial and admitted over defendant's objection at the trial. Conviction resulted, and the Court of Appeals affirmed. The Supreme Court reversed the conviction. It held that the entry and subsequent search were unlawful, and the evidence seized should have been suppressed, stating:

"Entry to defendant's living quarters, which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." Id. at 13, 68 S.Ct. at 368.

In Johnson, as here, the government conceded that the arresting officers did not have probable cause to arrest the petitioner until they had entered her room, and "(i)t was therefore their observations inside of her quarters, after they had obtained admission under color of their police authority, on which they made the arrest." Id. at 16, 68 S.Ct. at 370. In reversing the petitioner's conviction, the Supreme Court stated, in language equally applicable to the instant case:

"An officer gaining access to private living quarters under color of his office and of the law which he per-

sonifies must then have some valid basis in law for the intruson. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers, and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." Id. at 17, 68 S.Ct. at 370.

Respondent has called this Court's attention to no case in which a court has sustained a conviction obtained by the use of evidence secured by the police in a search of private living quarters to which they had gained entry under circumstances similar to those disclosed by the record in this case. In fact, all of the cases dealing with this issue which have been discovered by this Court have held that mere acquiesence in the entry to private living quarters by police officers acting under color of their office is insufficient to constitute the type of consent which is required for the understanding and intentional waiver of a constitutional right. Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (1954); Nelson v. United States, 93 U.S.App.D.C. 14, 208 F.2d 505, cert. denied, 346 U.S. 827, 74 S.Ct. 48, 98 L.Ed. 352 (1953); Catalanotte v. United States, 208 F.2d 264, 268 (6th Cir. 1953); Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951); Herter v. United States, 27 F.2d 521 (9th Cir. 1928); United States v. Gregory, 204 F.Supp. 884 (S.D.N.Y.), aff'd, 309 F.2d 536 (2d Cir. 1962), cert. denied, 373 U.S. 953, 83 S.Ct. 1684, 10 L.Ed.2d 707 (1963); United States v. Gross, 137 F. Supp. 244 (S.D.N.Y.1956); United States v. Alberti, 120 F.Supp. 171 (S.D. N.Y.1954); United States v. Sully, 56 F.Supp. 942 (S.D.N.Y.1944); United States v. Hoffenberg, 24 F.Supp. 989 (E.D.N.Y.1938); United States v. Marra, 40 F.2d 271 (W.D.N.Y.1930); United States v. Slusser, 270 Fed. 818 (S.D.Ohio 1921); cf. Amos v. United States, 255 U.S. 313, 317, 41 S.Ct. 266, 65 L.Ed. 654 (1921); Gouled v. United States, 255 U.S. 298, 305, 41 S.Ct. 261, 65 L.Ed.

647 (1921). Compare: Holt v. Simpson, 340 F.2d 853 (7th Cir. 1965); United States v. MacLeod, 207 F.2d 853 (7th Cir. 1953); United States v. Roche, 36 F.R.D. 413 (D.Conn.1965); United States v. DeVivo, 190 F.Supp. 483 (E.D. N.Y.1961). These cases hold that voluntary consent to a search has not been given when the defendant, although by words or acts permitting the entry of police officers, is in actuality submitting in an orderly way to the exercise of the officers' power and authority. They apply the general principle that a waiver of basic constitutional rights is not to be lightly implied, and that the " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). They recognize that consent to a search and seizure in derogation of one's constitutional right of privacy must be proved by clear and convincing evidence and it must appear that the consent was not the result of duress or coercion, actual or implied. Amos v. United States, supra; Judd v. United States, supra, 190 F.2d at 651; Karwicki v. United States, 55 F.2d 225, 226 (4th Cir. 1932); Kovach v. United States, 53 F.2d 639 (6th Cir. 1931); United States v. Gregory, supra. Thus, " 'invitations' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. * * *" Judd v. United States, supra, 190 F.2d at 651. In such circumstances, a finding of actual consent, freely and voluntarily given, has been held to be "unfounded in reason," Herter v. United States, supra, and to "disregard common experience." United States v. Gross, supra, 137 F.Supp. at 248.

If there can be any doubt that the principles of Johnson and the above cases compel the conclusion that Albert's permission to the officers' entry into his apartment was "granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right," it is dispelled by the finding of the trial justice that the motivation which led Albert to permit the offi-

cers' entry was his realization "that there was nothing to be gained by denying the officers entrance and that he might as well let them in to find the stolen goods, *the discovery of which now appeared inevitable anyway."* (Emphasis added.) The conclusion of the Maine court that Albert's permission was "voluntarily given and his volition unaffected by any aura of the law" is wholly inconsistent with this finding of the trial justice as to Albert's motivation. In light of this finding it seems clear that in permitting the officers to enter his apartment, Albert was acceding to an entry which he believed he was powerless to prevent, rather than freely and intelligently waiving a known constitutional right.

The authorities which have been cited plainly establish that Albert's acquiescence in the officers' entry into his apartment was "granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right;" that their subsequent search of Albert's apartment and seizure of the evidence thus discovered was unlawful; and that petitioner had standing to challenge the legality of the search when the evidence it produced was proposed to be used against him. It follows that his motion to suppress should have been granted, and the fruits of the search should not have been received in evidence at his trial. Mapp v. Ohio, supra.

For the reasons which have been stated, this Court holds that petitioner's conviction was obtained as the result of an unlawful search and seizure in violation of his rights under the Fourth and Fourteenth Amendments. Accordingly, the judgment of conviction and sentence imposed upon petitioner by the Penobscot County Superior Court is vacated, and the matter is remanded to that court to afford the state an opportunity to grant petitioner a new trial at which it shall not offer in evidence the articles obtained as a result of the search of Albert's apartment on the morning of March 4, 1963.

In the event of the failure of the state to grant petitioner the above relief within 60 days from the date hereof, the writ will be sustained and petitioner ordered discharged from custody. Cf. Jackson v. Denno, 378 U.S. 368, 391–396, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964); O'Brien v. Lindsey, 202 F.2d 418 (1st Cir. 1953).

The Clerk will enter an appropriate order in accordance with the foregoing, which order shall also provide that this Court shall retain jurisdiction of the present petition for the entry of such further orders as may be necessary or appropriate.[2]

---

**2.** Throughout the entire state court proceedings as well as the proceedings before this Court petitioner has been ably represented by his state court-appointed counsel, Gene Carter, Esquire, of Bangor, Maine.