OPINION *Page 2 
{¶ 1} Appellant, Kevin Adams, appeals the trial court's denial of a motion to suppress evidence arguing that his wife did not voluntarily consent to the search of their home. Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} On February 16, 2007, the appellant was indicted by the Fairfield County Grand Jury for one count of carrying a concealed weapon, in violation of R.C. 2923.12(A), one count of unlawful possession of a dangerous ordnance in violation of R.C. 2923.17(A) with a firearm specification pursuant to R.C. 29141.141, one count of inducing panic in violation of R.C. 2917.31(A)(2) and (A)(3) and one count of using a weapon while intoxicated in violation of R.C. 2921.33(A).
 {¶ 3} On March 6, 2007, appellant filed a motion to suppress on the basis that law enforcement had unlawfully seized evidence from appellant's home including a 12 gauge sawed-off shotgun. Appellee filed a response in opposition.
 {¶ 4} On May 17, 2007, the trial court conducted a hearing on appellant's motion to suppress. After the presentation of evidence, the trial court took the matter under advisement.
 {¶ 5} On July 26, 2007, by judgment entry the trial court overruled appellant's motion to suppress. The trial court held that the search of the appellant's home was based on consent which had been voluntarily given by the appellant's wife. The trial court further found that there was sufficient probable cause to search the home and that a search warrant could have been issued which would have resulted in the inevitable discovery of the items seized. *Page 3 
 {¶ 6} On August 2, 2007, appellant entered a no contest plea to one count of unlawful possession of a dangerous ordnance i.e. a sawed-off shotgun, in violation of R.C. 2923.17(A) a fifth degree felony. The remaining charges were dismissed. Appellant was sentenced to serve a nine month sentence but was placed on a three year term of community control sanctions.
 {¶ 7} Appellant now seeks to appeal the trial court's denial of his motion to suppress setting forth the following assignment of error.
 {¶ 8} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OF ITEMS SEIZED FROM THE DEFENDANT'S HOME."
 {¶ 9} In this assignment of error, appellant argues that the trial court erred in finding that his wife voluntarily consented to a search of their home, and in further holding that the items which were seized would have inevitably been discovered. Appellant argues that his wife's consent was not voluntary because she merely acquiesced to the authority of the law enforcement officers. Appellant also argues that the evidence did not establish probable cause for a search of the home which could have led to the inevitable discovery of the seized items.
 {¶ 10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982) 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct *Page 4 
law to the findings of fact. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; andGuysinger, supra.
 {¶ 11} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals against unreasonable governmental searches and seizures. Warrantless searches are per se unreasonable unless one of the well-delineated exceptions applies. Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507, 19 L.Ed.2d 576. One such exception to the warrant requirement is a search conducted pursuant to consent. Schneckloth v.Bustamonte (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854. When the state seeks to establish consent for a warrantless search, it is not limited to proving that the defendant himself consented, but it may also show that the consent was obtained from a third party who possessed common authority or other sufficient relationship over the premises to be inspected. United States v. Matlock (1974), 415 U.S. 164,171, 94 S.Ct. 988, 39 L.Ed.2d 242; Schneckloth v. Bustamonte, supra. Law enforcement officers do not need a warrant, probable cause or even reasonable, articulable suspicion to conduct a search when consent for a search is voluntarily given. State v. Riggings, 1st Dist. No. C-030626, *Page 5 2004-Ohio-4247, at paragraph 11, citing Schneckloth v. Bustamonte
(1973), 412 U.S. at 219; State v. Comen (1990), 50 Ohio St.3d 206, 211,553 N.E.2d 640.
 {¶ 12} "The question whether consent * * * was in fact voluntary or was the product of duress or coercion, express or implied, is to be determined by the totality of all the circumstances, and is a matter which the government has the burden of proving" by clear and convincing evidence. State v. Bailey 1989 WL 74861 (Ohio App. 4 Dist.), unreported citing Schneckloth v. Bustamonte (1973), 412 U.S. 218; Bumper v. NorthCarolina (1968), 391 U.S. 543); State v. Posey (1988),40 Ohio St.3d 420, 427, 534 N.E.2d 61; State v. Comen (1990), 50 Ohio St. 3d 206,553 N.E. 2d 640.
 {¶ 13} Clear and convincing evidence is evidence that would produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. To meet the clear and convincing standard requires a higher degree of proof than a preponderance of the evidence, but less evidence than reasonable doubt. State v. Wilson
(2006), 113 Ohio St. 3d 382, 865 N.E. 2d 1264.
 {¶ 14} The Bailey court, cited U.S. v. Phillips (1981), 664 F.2d 971, which set forth some criteria for the determination of voluntariness: "Among the factors considered in evaluating whether a defendant's consent was in fact voluntary-none of which is a controlling factor-are voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found." Voluntariness cannot be established by a mere showing that the person simply acquiesced to a claim of lawful *Page 6 
authority. Bumper v. North Carolina, Supra; See, e.g., Amos v.United States, 255 U.S. 313, 317, 41 S.Ct. 266, 267, 65 L.Ed. 654; Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436;Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819; United States v. Marra, D.C., 40 F.2d 271; MacKenzie v. Robbins, DC, 248 F.Supp. 496.
 {¶ 15} In the case sub judice, Eric Speigle of the Lancaster Police Department testified that on or about December 10, 2006, he responded to a domestic dispute at the appellant's home. When he arrived, the appellant's wife, Stephanie Adams, and teenage daughter were standing in the street outside the residence. Mrs. Adams reported that the appellant was inside the home, drunk and belligerent. The officer also observed appellant's teenage son run out the front door of the home in his boxer shorts yelling, "Dad has a gun and he told me to get out." T.7. The officer testified that he heard a lot of noise inside the home and Mrs. Adams expressed concerned that the appellant might commit suicide.T.7 The officer testified that he put Mrs. Adams and her children in a police cruiser and drove the family a safe distance from the home T.8.
 {¶ 16} Officer Speigle testified that, after transporting the family, he observed the appellant come out onto the front porch of the residence and indicate that he had a gun. The appellant refused to disarm and told the officers that they would have to shoot him.T.11-14. As the appellant was walking back into the house, the officer observed a gun in the back waistband of the appellant's pants and a hunting knife strapped to his right hip.T.66. The officer testified that he observed the appellant come out of the door a second time and watched him walk toward a vehicle in the driveway. T.15. Officer Speigle stated that Officer Sandbrink tackled the appellant before he could reach the *Page 7 
vehicle, handcuffed the appellant and placed the appellant under arrest. T. 16-17. The officers seized the hunting knife, handgun and two loaded magazines from the appellant's rear pocket. The seized magzines did not match the handgun the appellant was carrying. T.70, 75.
 {¶ 17} Officer Speigle testified that, after the appellant was in custody, he and Officer Morehouse asked Mrs. Adams if they could go into the house "to take some photos", "make sure * * * nobody else was hurt in the house", make sure that there "was nothing unsafe in the house for the family" and to see if the appellant may have left a suicide note. T.19. Officer Speigle and Officer Morehouse both testified that, in response to the request, Mrs. Adams permitted the officers to go into the house and had no objection to the officers finishing their investigation. T.20, 72. Officer Morehouse testified "there was no issue at all." T.73.
 {¶ 18} After entering the home, the officers observed an assault rifle facing the front door.T.22. At the top of the steps, the officers found an open safe filled with rifles and shotguns including a sawed-off shotgun. The officers confiscated the sawed-off shotgun because it was illegal. T.22. Due to the nature of the call, the other weapons were also seized so that there would not be any weapons in the house if the appellant were permitted to return. T.23. Officers Speigle and Morehouse testified that, if Mrs. Adams had not given them consent to search the home, they would have secured the scene in order to get a search warrant.
 {¶ 19} Stephanie Adams, the appellant's wife, testified that she had been married to the appellant for fifteen years and is employed as a realtor with Century 21 Darfus Realty. She testified that, on or about December 11, 2006, she called 911 after *Page 8 
her husband arrived home from a wedding reception, intoxicated. T.94. She stated that he was drunk, was talking some "crazy stuff" and was not himself. T.145. She stated he was slurring his speech and acting goofy. T.146. She testified that the appellant went to bed and when she checked on him she became concerned that he may have choked in his sleep. T.117. When she woke him he said something to the effect that she'd be better off if he were dead. T.148. She testified that she was mad at the appellant, called 911 and went outside. T.146. She testified that after the officers arrived, she and her family were placed in a police cruiser. Mrs. Adams testified that after her husband was in custody and she was allowed to leave the police cruiser, she engaged in the following conversation with Officer Spiegel:
 {¶ 20} "Adams: Well he had approached me and said that he needed my permission to search our home. I said no. I told him I saw no reason for them to have to enter my home. Nothing happened inside the home. And he said it would be fine, that they needed to go in and search the home and take pictures. At that point I said no. And he-at the end, he said, "Well you have to let us in." And I said "Okay, if I have to let you in, then all right.
 {¶ 21} "Counsel: And if you had continued to say, "No, you cannot go into the home," what do you believe would have happened?
 {¶ 22} "Adams: I believe with everything that had happened I would have been arrested for disobeying a police order.
 {¶ 23} "Counsel: Did you want them to go into your home?
 {¶ 24} "Adams: No, I did not. *Page 9 
 {¶ 25} "Counsel: Did you give them free and voluntary consent to enter your home?
 {¶ 26} "Adams: No I did not.
 {¶ 27} "Counsel: Then why did you let them go into your home?
 {¶ 28} "Adams: I was told by police officer Speigle I had to let them in." T.99-101.
 {¶ 29} On cross-examination, Mrs. Adams stated that she was not familiar with the officers who responded to the scene. T.135. She admitted that she could not think of any reason why the officers would want to do anything other than protect her family. T.135. She stated that Officer Morehouse had advised her that they wanted to make sure the home was secure. T.142. She testified that she had given permission to the police to enter the home. She admitted that she was not upset that they had entered the home, but that she was upset they had entered the home without her and was embarrassed because the home was cluttered with Christmas decorations. T.148. She stated, "I was upset that I was not allowed in my home while they went through it." T.148. In a taped statement, Mrs. Adams did not express any concerns regarding the police asking for her permission to enter the residence or to the officers entering the residence to perform a search for the safety of her family. T.151.
 {¶ 30} Based upon the evidence presented, we do not find that the trial court erred in finding that Stephanie Adams voluntarily consented to a search of the home. Mrs. Adams was not in custody at the time of the consent. Mrs. Adams had been advised by the officers that their intent was to search for weapons and secure the family home for the safety of her family. Mrs. Adams admitted that she did not believe the *Page 10 
officers had any other intention than to provide for her safety but that she was embarrassed that her home was cluttered with Christmas decorations. She further testified that she did not mind the search of the home but that she did not like the fact that she was not permitted to be in the home while the officers conducted the search.
 {¶ 31} The officers testified that one of the concerns in this type of situation is that the person who remained in the home may have set up "booby traps" and that part of their responsibility is to secure the residence. The officers stated that their search of the home did not go beyond the scope of Mrs. Adams consent to search for weapons and that upon entering the home, the weapons were in plain view. They testified that, at the time of the consent, Mrs. Adams was concerned for her husband, admitted he was intoxicated and acting strangely, and willingly permitted the officers to enter the residence.
 {¶ 32} The trial court is in the best position to judge the credibility of the witnesses. Although Mrs. Adam testified that her consent was not voluntary, the trial court obviously found the officers' testimony to be credible and the officers' entry into the home to be consensual. Accordingly, the trial court did not err in finding by clear and convincing evidence that Mrs. Adams voluntarily consented to permitting the officers to enter her home and conduct a search for weapons.
 {¶ 33} Appellant further argues that the trial court erred in finding that the officers would have inevitably discovered the weapons. But having found the trial court did not err in finding that the consent was voluntarily given, we decline to address this argument. *Page 11 
 {¶ 34} Accordingly, the appellants' assignment of error is not well taken and is hereby overruled.
 {¶ 35} The decision of the Fairfield County Court of Common Pleas is hereby affirmed.
 Edwards, J., Farmer, P.J., and Wise, J., concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1