UNITED STATES of America,
Appellee,

v.

George Ludwig **DORNBLUT**, Appellant.

No. 140, Docket 24903.

United States Court of Appeals
Second Circuit.

Argued Nov. 14, 1958.

Decided Dec. 29, 1958.

C. Joseph Hallinan, Jr., New York City, for appellant.

Robert B. Fiske, Jr., Asst. U. S. Atty., S. D. New York, New York City (Arthur H. Christy, U. S. Atty., and George I. Gordon, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

**950**

LUMBARD, Circuit Judge.·

This appeal turns principally on whether the district court was justified in denying defendant Dornblut's pretrial motion to suppress evidence consisting of a five dollar bill seized on May 22, 1957 during the alleged illegal search of his apartment at 235 West 75th Street, New York, N. Y. without a warrant and allegedly without his consent. There was ample evidence to support the charge in Count 2 that on May 22, 1957 Dornblut received, sold and facilitated the transportation, concealment and sale of heroin in violation of 21 U.S.C.A. §§ 173 and 174. We find no error in Judge Sugarman's denial of the motion to suppress, or in the conduct of the trial by Judge Weinfeld and accordingly we affirm the conviction.

The facts regarding the search and seizure at Dornblut's apartment were developed at a pretrial hearing at which defendant called as his only witnesses all five federal narcotics agents who participated in the search. Briefly summarized they are:

On May 22, after Dorothy Dinolfo had been arrested for delivering narcotics to Agent Groff, for which he had previously given her money, Dinolfo advised the agents that she had been supplied at apartment 4S1 at 235 West 75th Street by "George," whose picture she identified. Thereafter agents Groff, Knight and Boring went with Dinolfo to the apartment; but receiving no response they left after waiting an hour or so.

Meanwhile two other agents, Consoli and King, who were working independently on the basis of other information, went to the lobby of the apartment house and saw a woman named Sherry go upstairs and return a few minutes later with Dornblut. Consoli and King then identified themselves to Dornblut and said they wanted to speak to him. Dornblut suggested they go upstairs to his room. They went up to apartment 4S1 where Dornblut opened the door with his key. He told the agents he was

George Ludwig of the Daily News,[1] that he did not know anything about narcotics and that they were "perfectly free to look around and search the room." Consoli and King found nothing during a twenty minute search and returned to the lobby. When Dornblut reappeared in the lobby with Sherry they realized they had not secured sufficient identification and they asked Dornblut if he would show them some identification. Dornblut then said they could go up to his room and see it and all three returned to the room. When they reached the fourth floor they met Agents Groff, Knight and Boring who had returned and were waiting in the hallway. Dornblut again opened the door with his key saying to the agents "Go right in. You can look around." And to Knight Dornblut said that there were no narcotics there but he could look around and search the apartment. During this second search King discovered a roll of bills totalling about $40 which was shoved down between the back and the springs of an upholstered chair. A five dollar bill in the roll was identified by its numbers as one of the bills given to Dinolfo by Groff earlier in the evening. Whereupon Dornblut was arrested.

On this testimony Judge Sugarman found that "the defendant voluntarily admitted the agents to his apartment" and that he invited them to make the search. On such a record it is difficult to see how Judge Sugarman could have found otherwise. Obviously Dornblut knew, from his manner of supplying Dorothy Dinolfo and Sherry, that no narcotics could be found in his apartment and, as he never thought that any of the bills given him by Dorothy Dinolfo would be tell-tale, he was confident that the stratagem of inviting the agents to search would be the best way of dispelling their suspicions.

▉▉ Of course the search and seizure in each case must stand or fall on its own special facts, and in the district court's judgment of the credibility of

---

1. Needless to say this was not the truth.

the witnesses. We have sustained district court findings of consent to search on facts far more doubtful than those which were before the district court here. See e.g., United States v. Adelman, 2 Cir., 1939, 107 F.2d 497; United States v. Bianco, 2 Cir., 1938, 96 F.2d 97. See also United States v. McLeod, 7 Cir., 1953, 207 F.2d 853, which we think correctly distinguished the case of Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. Contra, Higgins v. United States, 1954, 93 U.S.App.D.C. 340, 209 F.2d 819. In the Johnson case the officers, under color of authority, procured entry to a hotel room from which they could smell burning opium. When the door was opened they immediately discovered that the defendant was alone and, as the government conceded, only then had sufficient reasonable cause to believe her guilty of the commission of a felony to justify an arrest without a warrant under the governing Washington law. The officers thereupon formally arrested the defendant and informed her that a search would be made incident to the arrest. The case therefore turned on the validity of the arrest, and consequently, since only the knowledge that the defendant was alone justified the arrest, upon consent to the entry which provided that information. The Court found no consent in the mere opening of the door. Here, however, express consent to search was given by the defendant before the agents even entered the apartment. There was no basis for a finding of coercion. Neither at the hearing nor at the trial was there any denial of the testimony of the agents regarding the events leading up to the search of Dornblut's apartment. Dornblut himself did not take the stand.

■ There is no merit to the appellant's contention that the five dollar bill was not a proper object of seizure. It was a fruit of the crime and under the circumstances it constituted important evidence of the crime. Appell v. United States, 5 Cir., 1928, 29 F.2d 279; Furlong v. United States, 8 Cir., 1926, 10 F.2d 492. See also Carroll v. United States, 1925, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543.

■ The defendant also complains that it was error to submit the sale count to the jury when the conspiracy count was dismissed at the end of the government's case. It is argued that the conspiracy atmosphere was harmful to the defendant and that testimony elicited regarding the conspiracy count was prejudicial. At the same time the defendant concedes, as he must, that most of the evidence which he argues to be objectionable was developed by his own counsel in the examination of witnesses.

■ In any event, the evidence relating to the defendant's course of conduct in supplying Dorothy Dinolfo and Sherry with narcotics was necessary and relevant testimony regarding their relationship, and it narrated transactions similar to the sale of May 22 and leading up to the events of that evening. The evidence bore on the defendant's guilty knowledge, intent and purpose and was properly received. See United States v. Herskovitz, 2 Cir., 1954, 209 F.2d 881, 885.

■ Nor did the defendant's counsel move at any time to strike out any of the testimony now objected to. On the contrary, counsel expressly stated that testimony regarding prior sales might remain in the record. Thus the course of not objecting, but of consenting to this procedure, must have seemed to be the preferable strategy at the time. That being so, it may not be argued now that it was error for the court not to have taken certain corrective steps for which counsel did not ask.

Furthermore, Judge Weinfeld, who presided at the trial, charged the jury that the evidence of prior sales should be considered only with respect to the defendant's intent regarding the sale of May 22.

We commend C. Joseph Hallinan, Esq. for his thorough, capable and painstak-

ing representation of the defendant as assigned counsel on this appeal.[2]

Judgment affirmed.

2. Dornblut prosecuted this appeal *in forma pauperis;* at the trial he was represented by counsel of his own selection.