**UNITED STATES of America, Plaintiff,**
v.
**James Bernard FITZPATRICK,**
**Defendant.**

**No. NCR 13–68.**

United States District Court
D. Utah, N. D.

Sept. 12, 1968.

James F. Housley, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff.

Richard Richards, Ogden, Utah, for defendant.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

Defendant is under indictment for bank robbery, 18 U.S.C. §§ 2113(a), 2113(d) (1964). A pre-trial evidentiary hearing has been held upon defendant's motion to suppress statements he made to F.B.I. agents before his arrest, items seized prior to his arrest from an automobile which he had been driving, and money found by F.B.I. agents after his arrest on premises in which defendant had been living. The defendant asserted that the statements were made without proper advice concerning constitutional rights and that the property and money were seized without his consent, without a warrant, and not incident to a lawful arrest.

The defendant testified that agents of the Federal Bureau of Investigation interviewed him at 129½ Twenty-Fifth Street, Ogden, Utah, and asked him to accompany them, saying to him, "We've got a matter we want to clear up." Defendant made no objection and accompanied the agents to a parking area where as he sat in the car he was viewed by others, apparently for the purpose of identification. Thereupon he was asked about a Cadillac automobile which he had borrowed from his landlady. His consent to search it was requested, the agents stating, according to the defendant, that "they were going to search it anyway." He said he signed some papers but did not read them. It later developed that he had signed a consent to search the car, as hereinafter more particularly found. The defendant did not furnish the keys to the Cadillac but stated that they had been stolen, and the trunk was opened by a key man who had been called by the agents. Inside were found a hand gun, a pair of rubber gloves, and a nylon stocking, among other things.

According to the defendant, it was long after the agents first talked to him that he was first advised concerning his rights—after the trunk of the car had been opened and after further interrogation. The defendant further testified that about 11:30 p.m. he asked if he "had the right to an attorney" and the agents told him he did, whereupon he talked to his attorney. Upon defendant's demand to be either placed under arrest or released the agents told the defendant not to leave the premises and thereafter formally placed him under arrest. The defendant testified that while he did not verbally object to the search of the car he did not want it searched and that he had never consented to the search of his room at 129½ Twenty-Fifth Street. On cross-examination he conceded that he was advised of his constitutional rights by the agents and that he understood what was said, but insisted that the advice was given after the automobile had been searched.

The questions of suppressing the seized money and the statements made by the defendant to the agents can be quickly resolved. Apparently up to the time of the hearing the defendant was of the impression that the money had been found in a room which he claimed to have rented. The undisputed evidence, however, established that the money was found in a dresser in the room of Mrs. Weakly, the proprietress, and that Mrs. Weakly had given a written consent to a search of the entire premises. The additional search of a nearby room which defendant claimed to have rented is immaterial to the present inquiry; indeed, at the time of the hearing the defendant substantially conceded that he had no standing to object to the search of Mrs. Weakly's room.

It is clear that prior to the time any significant statements were made by the defendant, he was fully advised concerning his constitutional rights. In fact, the record does not reveal any directly incriminating statements at all, the defendant having denied any complicity whatsoever in the robbery.

We return, then, to the search of the automobile. If this search, as defendant claimed, had taken place before his constitutional rights had been explained to him and without a knowledgeable and

voluntary consent on his part, it could not be sustained. The testimony adduced by the government, however, put the circumstances in a strikingly different light.

Special Agent Gordon S. Carr testified that when he and his associate first interviewed the defendant they were actually investigating another man who was reported to have been driving a Cadillac automobile resembling the one reported to have been connected with the robbery. They learned from Mrs. Weakly, however, that prior to the robbery this car had been turned over to the defendant. Upon contacting him and confirming that he had been using the automobile, it was observed for the first time that the defendant had a tatoo mark resembling one which had been seen on the robber at the time of the crime. This was when the defendant became a prime suspect. Almost immediately he was orally advised of his rights in full compliance with the requirements of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1965). The observation of the defendant as he sat in the agents' automobile in a parking lot and his consenting to the search of the Cadillac followed. Admittedly, the defendant had not yet been arrested and there was no warrant for the search of this car.

The defendant urges that the waiver of a constitutional right will not readily be found and, indeed, that only a voluntary consent will dispense with the necessity of a warrant if the search is not incident to a lawful arrest. He further points out that a consent is not voluntary if it is the product of duress or coercion, actual or implicit, citing United States v. Smith, 308 F.2d 657 (2d Cir. 1962); Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951); Villano v. United States, 310 F.2d 680 (10th Cir. 1962); Wion v. United States, 325 F.2d 420 (10th Cir. 1963); Weed v. United States, 340 F.2d

827 (10th Cir. 1965); United States v. Kidd, 153 F.Supp. 605 (W.D.La.1957).

A consent to a search, however, "can be binding in the absence of a search warrant even though there was ample time and probable cause for obtaining a warrant." Anderson v. United States, 399 F.2d 753, (10th Cir. 1968).

The evidence plainly established that before the search the following form of consent was signed by the defendant:

2. James Bernard Fitzpatrick, having been informed of my constitutional right not to have a search made of the premises [sic] hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize Gordon S. Carr and George W. Larson, Special Agents of the Federal Bureau of Investigation, United States Department of Justice, to conduct a complete search of the 1957 Cadillac A. E. 9808 located at the rear of Toney's Lounge. These agents are authorized by me to take from my premises [sic] any letters, papers, materials or other property which they may desire.

This written permission is being given by me to the above named Special Agents voluntarily and without threats or promises of any kind.

[signed] James B. Fitzpatrick
Witnesses:

[signed] Gordon S. Carr
George W. Larson

The defendant's testimony concerning the giving of consent was somewhat perfunctory. There was no indication that there was any misunderstanding on his part. While he was somewhat vague about the execution of the consent, saying he thought he signed a paper or papers in two places, the defendant did not deny knowing that it was a consent to the search; about the most he claimed was that he was frightened, that while he did not object to the search he did not want it made, and that he believed from what the agents said that if he had not consented the search would have been

made anyway. On the other hand, Carr's testimony that the defendant signed the consent voluntarily after a careful and fair explanation of his rights was clear and convincing. In addition to an oral explanation of his rights, the defendant was permitted to read a separate written statement of them, which he declined to sign. Whether the question of signing this second paper came up before or after the defendant signed the consent to search is not clear from the evidence, the agent not specifically remembering the sequence in this respect. The preponderant evidence, however, is that at least an oral explanation was made, not only of the defendant's right to have no search made without a warrant, but also of his right to remain silent and his right to counsel. Moreover, the evidence is clear and convincing that the defendant did not request counsel until long after the search and that he did sign the consent which, among other things, recited his right to no search without a warrant in the absence of his consent.

Since the articles in the trunk of the Cadillac were of a most incriminating character, I do not dismiss lightly the argument that it does not make sense to assume that the defendant would voluntarily permit their discovery. Especially does this circumstance deserve careful consideration in view of the weight attached to similar situations by other courts. In Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819 (D.C. Cir. 1954), the court stated:

> But no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered. It follows that when police identify themselves as such, search a room, and find contraband in it, the occupant's words or signs of acquiescence in the search, accompanied by denial of guilt, do not show consent; at least in the absence of some extraordinary circumstance, such as ignorance that contraband is present. *Id.* at 820.

Again, In United States v. Gregory, 204 F.Supp. 884 (S.D.N.Y.1962), the court said:

> Aside from the material variances as to what transpired before the hotel clerk, the alleged consent under the facts and circumstances here presented—a defendant at once denying that narcotics are in his room and at the same time agreeing to a search which obviously must yield narcotics —is not in accord with common experience. Id. at 885.

Here, if Fitzpatrick were guilty of the robbery charged, he probably knew that the trunk of the car contained what could have been instrumentalities. While the defendant must be presumed innocent at this stage of the proceedings, as well as during a trial, it is not sufficient to say from the mere presumption of innocence that he did not know of the presence of the items in the car and to explain the giving of consent on this basis. The question of consent must be resolved in light of the totality of circumstances shown by the evidence; in view of the rule that consent must be established by clear and positive evidence the question of actual guilt or innocence may not be prejudged to preclude the canvassing of all possibilities on the motion to suppress.

But even assuming that the defendant knew that tools of the burglary were then in the trunk of the Cadillac at the time he signed the consent to search, in my judgment there is no consideration of logic or circumstance which overcomes the government's clear and positive evidence that the defendant voluntarily consented to the search. He was then aware that the agents knew that prior to the burglary the automobile had been turned over to him by the owner, Mrs. Weakly. He was aware that the government suspected him of the crime but as far as the evidence discloses he was not aware of the strength of the government's evidence. He reasonably may have supposed that the automobile could be linked with some obser-

vation at the scene of the burglary, but could well have thought that his presence in it at the time of the burglary was not or could not be established. The evidence shows that the defendant was not unsophisticated or inexperienced in criminal proceedings. He knew that attention had been focused on the car and that probably it would remain under government surveillance until it was searched, and that he would have no opportunity to remove its contents without the agents' knowledge. He claimed that the keys to the car had been stolen; this was the reason he gave the officers for his inability to open the trunk for them.

Under such circumstances, if he were guilty, his best chance of minimizing the effect of finding tools of the crime in the car would have been to consent freely to the search, to claim that his keys had been stolen and to infer that someone else, not he, had put the burglary tools in the trunk. This would not only be consistent with his affirmation of innocence but would support it. The alternative of refusing to permit the search until a warrant was obtained could have been viewed as less consistent with self interest under these circumstances.

*Higgins* and *Gregory, supra,* concede that there may be extraordinary circumstances in which a defendant's assertions of innocence and the discovery of contraband as a result of a consent to search could be consistent with true volition. Beyond "ignorance that contraband was present," another dimension was noted by the court in United States v. Smith, 308 F.2d 657, 663 (2d Cir. 1962)—"the mistaken belief that he [the defendant] has nothing there which will incriminate him", citing United States v. De Vivo, 190 F.Supp. 483 (E.D.N.Y.1961). In *De Vivo,* the court sustained a search revealing merchandise the contraband character of which the defendant claimed he did not know and which he claimed was placed there by someone else. The court observed:

Assuming that after the storage of the merchandise defendant subsequently became suspicious as to its contraband nature, his voluntary consent could well be founded upon a desire to be cooperative and to shift the culpability elsewhere. *Id.* at 487. [Footnote omitted.]

In United States v. Dornblut, 261 F. 2d 949 (2d Cir. 1958), a search for narcotics resulted not in the finding of narcotics but in the seizure of currency connected with the purchase of the narcotics. The search, claimed by the government to have been made with the defendant's consent, was upheld on facts which are not closely in point but with the pertinent comment that " * * * as he [the defendant] never thought that any of the bills given him by Dorothy Dinolfo would be tell-tale, he was confident that the stratagem of inviting the agents to search would be the best way of dispelling their suspicions." *Id.* at 950.

Any contention that a defendant's consent to search a place where he knows incriminating evidence will be found is necessarily invalid is too broad. The circumstances relied upon by defendant here are insufficient to dispel the evidence clearly and positively showing that he advisedly and understandingly consented to the search of the Cadillac.

One further argument should be discussed in deference to the caution and misgivings with which courts view any consent given while a defendant is under arrest or in circumstances suggesting the possibility of intimidation, coercion, or duress of any kind. See Villano v. United States, 310 F.2d 680 (10th Cir. 1962); Wion v. United States, 325 F.2d 420 (10th Cir. 1963); Weed v. United States, 340 F.2d 827 (10th Cir. 1965). See also United States v. Kidd, 153 F.Supp. 605 (W.D.La.1957), strongly relied upon by defendant. At the time of the search of the automobile, the defendant was not under arrest but he had been asked to accompany special agents to the location of the automobile in question. He was then a prime suspect, and according to the testimony of the defendant, he had been told by the agents that even though he did not consent to the search of the car they would search it anyway. In

*Weed* it was held that a defendant's surrender of the keys to a rented automobile while he was in custody, after he had been told upon his inquiry that the arresting officers had no warrant but could get one if necessary and during a period of dramatic excitement involving drawn guns, did not constitute a freely and intelligently given consent to search. In *Villano* the defendant, while denying that he gave consent to the search of desk drawers, testified that he was told or thought that the police officer "was going to open them anyway." These and other cases relied upon by the defendant are far from in point on other elements, for the circumstances here are in sharp contrast to the excitement, displays of force, equivocal consents or other matters there considered in evaluating the totality of the circumstances. But since the availability of other means to effectuate a search was involved there as well as here, I have considered whether any express or implied coercion or duress may be found as to Fitzpatrick.

I believe and find that Fitzpatrick was given to understand that if he did not consent to the search the special agents would search the car anyway. He testified in so many words that the agents told him as much. The agents did not deny this but described other circumstances indicating that there was no attitude or climate of coercion or duress and that the alternative to a search by consent was the obtaining of a search warrant.

Indeed, this must have been apparent without expression to a defendant with any degree of experience concerning criminal procedure, and would have been clear anyway from the very consent the defendant signed, which recited that he had been advised of his constitutional right not to have a search made without a search warrant and of his right to refuse to consent to such search. In his testimony the defendant did not directly ascribe his signing of the consent to any threat or duress, but simply said that he was uncertain about what to do and afraid. He implied that while he signed one or more papers he did not know what he signed—a suggestion which I must reject as incredible in view of the entire record. After he had been orally advised of his rights and either immediately before or after he signed the consent to the search, he read but declined to sign a written waiver of the right to counsel. That he later talked to counsel over the telephone prior to his formal arrest does not cast into question the advice previously given him of his rights since it is reasonable to infer that before that he had hopes of avoiding arrest. Prior to the consultation with his counsel he also was asked to sign a consent to the search of the premises on Twenty Fifth Street, but declined to do so on the ground that the property belonged to Mrs. Weakly and that she would have to sign that consent to render it effective. It thus is apparent that he had the ability to, and did, exercise a rational judgment in responding to the agents' requests.

In such context it may fairly be concluded that defendant's casual testimony concerning the alternative to consent was no more than an understanding on his part that in the absence of the execution of a formal consent the agents would have the right to and would get a search warrant and search the car anyway. Would such a statement or understanding render the search involuntary, coerced, or induced by duress on this record? I think not. Rules must have limitations in reason; otherwise critical inquiry for the purpose of protecting constitutional rights would be transformed into universals. It is not reasonable to believe that no matter how clear a consent to search might otherwise be, it could not survive proof that there was a realization that if the search were not consented to an application for a search warrant would be made. I do not understand any prior case to go so far, despite general language that may be argued to have this effect. Such a construction would permit one faced with circumstances clearly justifying a search upon warrant to dissuade application for such a warrant by the knowledgeable execu-

tion of a written consent and then to capitalize upon the very obviousness and strength of the right to search by avoiding alike the application for a search warrant and the consequences of the consent.

■ I conclude on the present record that the consent to search the Cadillac automobile was voluntarily and understandingly given by the defendant without intimidation, duress, or coercion; that the defendant was timely advised of his constitutional rights; that any statements made to the agents prior to the arrest were advisedly and voluntarily made, and that the search of the Weakly room where the currency was found was validly consented to by her, without any right or claim on the part of the defendant to the contrary.

Accordingly, the defendant's motion to suppress is in all respects denied.