The UNITED STATES of America, Appellee,

v.

David George CULP, Appellant.

No. 72–1335.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1972.

Decided Jan. 25, 1973.

Certiorari Denied May 7, 1973.
See 93 S.Ct. 2161.

David L. Crawford, Lincoln, Neb., for appellant.

Daniel E. Wherry, Asst. U. S. Atty., Lincoln, Neb., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY, Circuit Judge, and DURFEE, United States Court of Claims Judge.

LAY, Circuit Judge.

The defendant, David George Culp, appeals a five year sentence under 18 U.S.C. § 2115 for the theft of money orders from a post office in Lincoln, Nebraska. On appeal he contends certain evidence was obtained by an illegal search and that an out-of-court confession was involuntarily made. He likewise challenges the trial court's instruction on reasonable doubt. After review of the record, we find no merit in the contentions and affirm the judgment of conviction.

Defendant and his wife on July 20, 1971, were arrested at their home in Hollywood, Florida, for possession and falsely uttering money orders that had been stolen from post offices. Local detectives had warrants for their arrest and had placed the Culp home under surveillance. A federal postal inspector, A. R. Anderson, who was in charge of the investigation, left before the arrest to obtain a search warrant. The surveillance team radioed Anderson that they felt the couple was attempting to flee and informed him they were moving in to make the arrest. Anderson, without the other officers' knowledge, abandoned his attempt to obtain the search warrant and went back to the house to take charge of the arrest.

Culp was arrested in the kitchen-dining area of the home; however, he and his wife were moved to a couch in the living room about eight to ten feet away for interrogation purposes. At approximately this time, Mrs. Culp's purse in the kitchen was searched and a gun removed from it. When the Culps were moved to the living room couch, a black bag lying on the coffee table in front of Culp was searched and found to contain a power pack and drill, a walkie-talkie and other items. Thereafter, defendant's car was searched, and guns were

found under the seat and burglary tools were found in the trunk. At trial none of the aforementioned items were offered in evidence. Defendant asserts that the searches of the black bag, the car and his wife's purse were illegal and induced him to consent to a further search, as well as inducing him subsequently to give an involuntary statement confessing his crimes.

■ Before discussing this contention we turn to the defendant's main argument that his consent for a search was involuntarily given because of the implied coercion caused by an announcement by one of the police officers that "we are in the process of getting one [a search warrant]; one of our men is getting one, and we'll search it [the premises] whether you like it or not." This conversation allegedly took place before Inspector Anderson arrived. Culp claims that he agreed to cooperate as a result of this statement, and consequently he produced an attache case and a satchel which contained the incriminating evidence to which complaint is now made. The defendant asserts that this statement invalidates his consent to a search based upon Bumper v. North Carolina, 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968), which held:

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion."

If this were the only evidence in the record, further analysis would be necessary to determine whether the alleged comment requires a finding of illegal coercion.[1] The record does not demonstrate that Culp immediately after discovering that the officers were getting a search warrant voluntarily produced the incriminating evidence. First, the record shows that Inspector Anderson arrived and advised Culp of his constitutional rights. Anderson informed Culp that he had reason to believe there were money orders and postal equipment in the house, and he asked Culp if he would cooperate. Culp had expressed a desire to negotiate leniency for his wife with the Hollywood police before Anderson arrived and he attempted to do the same with Anderson. Anderson said he could promise nothing, but stated he would tell the truth about Culp's cooperation if it was inquired about in his wife's case. Culp and his wife were allowed to converse privately several times concerning his cooperation before the defendant finally agreed to aid the officers. Culp then walked to a storage room where he disclosed a satchel and an attache case which he handed to the officers. The satchel and attache case contained a postal validating stamp, a box identified as belonging to the Lincoln post office, and an all purpose date validating stamp which were all admitted into evidence at

---

1. Many cases imply that where law enforcement officers indicate only that they will *attempt to obtain* or *are getting* a warrant that such a statement cannot serve to vitiate an otherwise consensual search. See e. g., United States v. Savage, 459 F.2d 60, 61 (5 Cir. 1972); United States v. Curiale, 414 F.2d 744, 747 (2 Cir. 1969), cert. denied, 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424; United States v. Boukater, 409 F.2d 537, 538–539 (5 Cir. 1969); United States v. Manarite, 314 F.Supp. 607, 612–613 (S.D.N.Y. 1970), aff'd, 448 F.2d 583 (2 Cir. 1971), cert. denied, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264; United States v. Fitz-patrick, 289 F.Supp. 767 (N.D.Utah 1968); People v. Ward, 27 Cal.App.3d 218, 103 Cal.Rptr. 671, 675–676 (1972); State v. Douglas, 488 P.2d 1366, 1373–1375 (Or.1971), cert. denied, 406 U.S. 974, 92 S.Ct. 2420, 32 L.Ed.2d 674 (1972); Barlow v. State, 280 A.2d 703 (Del.1971); Thurman v. State, 455 S.W. 2d 177 (Tenn.Cr.App.1970), cert. denied, 401 U.S. 938, 91 S.Ct. 930, 28 L.Ed.2d 218.

But see Poe v. Oklahoma City, 483 P.2d 1190, 1191 (Okl.Cr.App.1971); State v. Lewis, 80 N.M. 274, 454 P.2d 360, 363 (1969). Cf. Losieau v. Sigler, 421 F.2d 825, 827 (8 Cir. 1970).

trial. Inspector Anderson was also allowed to testify about a series of postal money orders given to him by the defendant although the money orders were not presented at trial. After Culp gave the police the satchel and attache case he was informed of his Fourth Amendment rights, and he signed a consent to search the remainder of the house, from which nothing was offered during the trial. Culp was then taken to the police station where he subsequently confessed to the crimes after again being advised of his rights.

The only evidence admitted at trial which the defendant claims was the result of an illegal search and seizure was the postal validating stamp, the Lincoln post office box and the all purpose date validating stamp. At the suppression hearing Culp testified in response to his counsel's questions:

"Q. What prompted you to show them—you did show them some of the things in the house?

"A. Yes, Sir; after Mr. Anderson arrived.

.      .      .      .      .      .

"Q. What induced you to do that?

"A. Because they had agreed to be lenient with my wife  .  .  .·"

The trial court subsequently held that the production of those items of evidence was free and voluntary. The evidence demonstrates that following the statement concerning the search warrant Culp refused to cooperate until he was promised some kind of assistance for his wife; that when Inspector Anderson arrived Culp immediately asked him

what kind of a deal could be worked out for his wife; that Culp was allowed to confer privately with his wife on several occasions to discuss leniency; that Culp himself went to the closet and removed the satchel and attache case and handed them to the police; and that Culp testified he cooperated to obtain leniency for his wife. We find that the record discloses that the "independent basis" for Culp's consent was to have the police and court go easy on his wife. This record adequately supports the trial court's finding that the consent to search was voluntarily given.

■      The defendant's second and third contentions are that his subsequent consent to the search and his confession were induced by the illegal searches of his car, his wife's purse and the black bag.[2] The trial court found "beyond a reasonable doubt"[3] that defendant's cooperation was voluntary and not induced or otherwise coerced. There exists ample evidence to support this finding.

The confession made by Culp at the police station occurred after repeated Miranda warnings were given by the officers. Culp was advised of his constitutional rights when he was arrested, when Inspector Anderson arrived (at which time he signed a waiver form) and when he was at the police station before making any statements. At trial during the confession hearing the defendant acknowledged that his rights had been explained to him and that he fully understood them.

The record is also replete with testimony by the defendant, his wife and the

---

2. Culp was being treated with methadone for narcotic addiction, and he claimed that he was experiencing withdrawal during this period and the officers would not allow him to take any methadone until everything was cleared up on the case. Inspector Anderson testified that they could not allow him to take anything until they could be positive what it was, and as soon as Culp was processed at the station, he was permitted to go to the

health unit and be treated. Anderson and Detective Chamberlain testified that they noticed no signs of withdrawal. In fact, after defendant made his recorded confession and after he had obtained some methadone, he gave another statement substantially the same as his first.

3. Cf. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); United States v. Watson, 469 F.2d 362 (5 Cir. 1972).

officers that Culp's only reason for cooperating was to obtain leniency for his wife. Mrs. Culp stated that her husband said:

> "Well, I don't want to cooperate. You understand that? You know me; you know what kind of a person I am, and I have never cooperated before. But if you feel that you can go easy on my wife and offer some type of leniency, well then maybe we have got something to talk about."

And at the hearing on his confession the defendant declared, "[Had there been no deal for leniency] [t]here would have been no confession or consent to search." Judge Urbom ruled both at the suppression hearing and at the confession hearing that the officers had made no improper or coercive promises or threats concerning leniency toward Culp's wife, and the record contains overwhelming evidence to support this holding. The three searches that the defendant claims were illegal did not result in any evidence which was used at trial, and any coercion that might have been produced was apparently ineffective to induce the defendant to cooperate according to his own admission. Therefore, we need not pass upon the legality of these searches.

■ The defendant's last contention relates to the court's instruction on reasonable doubt. Defendant insists the court committed plain error in the instruction. It is urged that the instruction negates an acquittal if the jury believes that "possibly" the defendant is innocent and that it requires "a substantial doubt" rather than a "reasonable doubt." The form of instruction used by the district court has been previously approved by this court and other courts of appeal. See e. g., Friedman v. United States, 381 F.2d 155, 160–161 (8 Cir. 1967); United States v. Aiken, 373 F.2d 294, 299 (2 Cir. 1967). See generally Holland v. United States, 209 F.2d 516, 522–523 (10 Cir. 1954), aff'd, 348 U.S. 121, 138–140, 75 S.Ct. 127, 99 L.Ed. 150. We find no error.

Judgment affirmed.