**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert C. BOLIN, a/k/a Bob Bolin,**
**Defendant-Appellant.**

**No. 74–1809.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1975.

Decided April 25, 1975.

Franklin S. Wallace and David L. Thompson, Rock Island, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Robert J. Kauffman, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendant, Robert C. Bolin, was convicted after a trial by jury of knowingly and intentionally using a communication facility, the mail, to facilitate the importation of cocaine in violation of 21 U.S.C. §§ 843(b) and 843(c). A sentence of four years imprisonment was imposed. This is an appeal from the judgment of conviction.

### THE FACTS

The facts in this case were largely undisputed. The defense presented no evidence at trial, but rested its case entirely on its argument that the government's evidence did not prove beyond a reasonable doubt that the defendant had the requisite intent to commit the crime.

The following statement of the facts is supported by the evidence introduced by the government at trial. A supervisory customs mail entry aide in New York

City, George Kallnischkies, intercepted and opened an envelope addressed to the defendant in Woodhull, Illinois, which had come from Colombia. The envelope contained two post cards taped together that were wrapped in a carbon paper. Inside the post cards was a glassine bag containing a white powdered substance. Kallnischkies field-tested the substance in New York and found it to be cocaine. Following instructions from the Drug Enforcement Administration, Kallnischkies resealed the envelope and sent it to Postal Inspector W. J. Babl in Rock Island, Illinois, for controlled delivery. Inspector Babl notified state and local law enforcement officials of the receipt of the letter. Babl accompanied the rural carrier who normally delivered mail at defendant's address, but when they found no one at home, a mail arrival notice was left in the mailbox and the letter returned to the Woodhull post office.

The next morning, defendant arrived at the post office, signed a receipt for the letter and accepted delivery. He then left the post office and entered his pick-up truck.

Special Agent Michael Ernst of the Illinois Bureau of Investigation went to the passenger side of the truck, opened the door, identified himself as a police officer and told the defendant to get out of the truck. The defendant picked up the letter which was on the front seat of the truck, handed it to Ernst and asked him if that was what he was looking for. Officer Robert J. Speidel of the Henry County Sheriff's Department approached the driver's side of the truck, drew his gun, identified himself as a police officer and told the defendant that he was under arrest. The defendant was frisked and a .38 caliber Derringer pistol was found on his person.

The defendant was then taken to the Henry County jail. There, he signed a printed form entitled "Permission to Search" in which he consented to have the officers search his home and take from the premises any property which they wished to have as evidence. At a pretrial hearing Ernst explained the circumstances under which the defendant had given his consent. He testified, "We told him that if he signed the search waiver, that we would not arrest his girl friend." Pursuant to this search waiver, officers conducted a search of defendant's home. Speidel found three letters in a night stand which were introduced into evidence at the trial.

The three letters were addressed to the defendant and were signed "Lowell." Two of the letters had been sent from Colombia and the third from Ecuador. The first letter described Lowell's work with a research team investigating the use of drugs by Indians in Colombia. The letter continued:

Bob, my main trip that I would like you to consider, which I hardly would thing [think] you to pass up . . . and that is my oil-painting on plex-a-glass—truly master-pieces weighing up to an oz. (can you dig) of snow-capped mountain and rushing waters—I'm selling them for $300.00—they can be reprinted 3 times at a $1,000.00 a piece . . . just as clean as can be . . . .

The second letter acknowledged receipt of a letter from the defendant and promised that the defendant's order for "paintings" would be quickly processed. The third letter proposed another deal, this time for "16 oil paintings fresh from Bolivia." The letter continued:

Bob that can be 3000 hits of very weak paint—dig— . . . window-pain [sic] cut 6 times or whatever you can come up with—16 oil painting[s] here cost $8,500.00. [T]hat's the cheapest for clean and the best and my artist will do it for 3000 hits or 2000 and the 400.00 I still have of yours—man you can't [beat] that deal . . . . Mailing to here man isn't any problem . . . .

Later, the substance contained in the letter taken from the defendant at the time of his arrest was subjected to a number of tests in the laboratories of the Illinois Bureau of Investigation and found to be cocaine.

Upon this evidence, the jury found the defendant guilty.

## ISSUES

In this appeal from the judgment of conviction defendant raises three issues:[1]

I. Whether it was error to deny defendant's motion to suppress the cocaine seized at the time of defendant's arrest.

II. Whether it was error to admit evidence at trial that the defendant had been armed at the time of his arrest.

III. Whether it was error to deny defendant's motion to suppress evidence of letters seized at defendant's home.

### I.

Prior to trial, defendant moved to suppress the evidence of the envelope with cocaine seized from him at the time of his arrest. Defendant contended that the search of the envelope in New York was illegal, making the arrest and search incident thereto the "fruits of the poisonous tree."

The court held a hearing on the motion to suppress the evidence. At the hearing the government introduced into evidence a completed Bureau of Customs form which had been received by Postal Inspector Babl in a package with the letter containing the cocaine. The form, signed by customs employee George Kallnischkies, indicated that he had seized the letter addressed to the defendant at the Port of New York after it was detected during a usual examination of foreign mail under an obscenity program.

■ Defendant objected to introduction of the customs form on the ground that it was hearsay. Even if the form was hearsay, it is clear that hearsay evidence is admissible in a hearing on a motion to suppress. United States v.

Matlock, 415 U.S. 164, 174–175, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). See Federal Rules of Evidence, Rules 104(a) and 1101(d)(1), Pub.L.No.93–595 (January 2, 1975).[2]

■ Furthermore, it is settled law that the validity of a search or arrest can be supported by evidence which was adduced at trial even though it was not presented at the pretrial suppression hearing. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Holloway v. Wolff, 8 Cir., 482 F.2d 110, 113 n.2 (1973); United States v. Canieso, 2 Cir., 470 F.2d 1224, 1226 (1972), and cases cited therein. George Kallnischkies himself testified at the trial that the letter was searched pursuant to procedures of the Bureau of Customs for inspecting foreign mail. This testimony may also be considered in our determination of the validity of the search in New York.

Our court's recent decision in United States v. Odland, 7 Cir., 502 F.2d 148, cert. denied, 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974), reviewed the law of border searches and its application to searches of first class mail. The court noted that "[a]ny person or thing coming into the United States is subject to search by that fact alone, whether or not there be any suspicion of illegality directed to the particular person or thing to be searched." 502 F.2d at 151. The court went on to hold that first class letters are not exempt from this general rule.

■ Thus, the search in New York of the letter addressed to the defendant was not unconstitutional and could provide the officers with information they properly could use in determining whether they had probable cause to arrest the defendant.

1. A fourth issue raised in defendant's brief concerning his opportunity to make a statement at the time of sentencing was abandoned at oral argument where it was conceded that such an opportunity had, in fact, been afforded.

2. Although the Federal Rules of Evidence have not yet gone into effect, our court several

years ago suggested that the district courts use the proposed rules as guidelines in making evidentiary rulings. United States v. McCarthy, 7 Cir., 445 F.2d 587, 591 (1971). Rules 104(a) and 1101(d)(1), as enacted, are virtually identical to the proposed rules.

■ At the time of the defendant's arrest the officers knew that the defendant had received from the mails an envelope containing cocaine. This was sufficient evidence to give them probable cause to arrest the defendant. *Cf.* Brubaker v. King, 7 Cir., 505 F.2d 534, 538 (1974); United States v. Molinaro, E.D. Wis., 350 F.Supp. 293 (1972).

■ When an arrest is lawful, the officers may search the arrestee's person and the area within his immediate control from which he might gain possession of a weapon or destructible evidence. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). At the time of defendant's arrest the letter containing the cocaine was next to the defendant on the front seat of his truck. Since it was within his immediate control, the letter could be seized in a search incident to the arrest.[3] The district court did not err in denying defendant's motion to suppress the evidence of the envelope which contained cocaine.

## II.

Defendant contends that the district court erred in admitting evidence that the defendant was armed at the time of his arrest. Prior to trial the defendant filed a motion in limine requesting that the government not introduce at trial any evidence of the fact that defendant was carrying a gun at the time of his arrest. At a pretrial hearing on the motion, the government told the court that it would not be introducing the gun.[4] Based on that representation, the court denied the motion in limine.

In its opening statement to the jury, the government made no mention of the fact that defendant had been armed. The defendant's counsel, however, in his opening statement said that the police approached the defendant in the truck with their guns pointed. Later, during the direct examination of Special Agent Ernst, the government elicited the fact that a .38 caliber Derringer was found when the defendant was frisked. The defense objected to the question and answer on the grounds that evidence of the defendant's gun was prejudicial, irrelevant and immaterial. The government responded that it had not intended to introduce evidence of the gun but thought it necessary to counter the defendant's statement that the police had used a gun in the arrest. The court overruled the objection.

Later, during the direct examination of Officer Speidel, the government again asked questions about the defendant being armed and the defense again objected. The court responded:

[W]e just cannot have this all one way. If we are going to complain about guns being drawn, we are going to admit evidence as to why they were drawn.

■■ The doctrine of curative admissibility which the court was applying here is well established in the common law of evidence which the district courts are still to follow in criminal cases on those questions not covered by the Federal Rules of Evidence. Rule 26, Federal Rules of Criminal Procedure. When a party opens up a subject, even though it may not be strictly relevant to the case, he cannot complain on appeal if the opposing party introduces evidence on the same subject. United States v. Parker, 7 Cir., 447 F.2d 826, 832 (1971); Esquire Restaurant, Inc. v. Commonwealth Insurance Co., 7 Cir., 393 F.2d 111, 118 (1968); McCormick's Handbook of the Law of Evidence § 57 (2d ed. 1972); I J. Wigmore, Evidence § 15 (3d ed. 1940).

■ The trial court has broad discretion when ruling on the relevance of

---

**3.** In light of this holding we do not reach the government's suggestion that there is an alternative basis to uphold the seizure. Where the defendant himself handed the letter to the officers, asking them if that was what they wanted, there may even be a question whether there was any search at all. *See* Coolidge v.

New Hampshire, 403 U.S. 443, 487–490, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

**4.** At oral argument the government conceded that by its pretrial representation that it would not introduce the gun, it also meant that it would not introduce evidence of the gun.

proffered evidence. United States v. Marlin, 7 Cir., 471 F.2d 764, 766 (1972); United States v. Parker, *supra*. The district court here did not abuse its discretion in admitting evidence that the defendant had been armed at the time of his arrest.

### III.

Prior to the beginning of the trial, defendant was notified that the government intended to introduce at trial the three letters from South America discovered in the search of defendant's home. Defendant filed a motion to suppress evidence of the letters. He contended that his consent to search his home was not freely given but was the result of coercion and threats. The government contended that the letters were admissible because of the written consent to search. The court denied the motion to suppress on the ground that the consent was not involuntary.

■■■ A search conducted pursuant to consent is an exception to both the requirements of a warrant and probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). " '[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.' Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 [1968]." *Schneckloth, supra,* 412 U.S. at 222, 93 S.Ct. at 2045.

In *Schneckloth,* the Supreme Court held that when the subject of a search is not in custody and the government attempts to justify a search on the basis of consent, the Constitution requires that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. The Court further stated that voluntariness is a question of fact to be determined from the totality of the circumstances. It specifically held that a subject's knowledge of a right to refuse is only one of the factors to be taken into account and is not determinative of the question of voluntariness. *Id.* at 248–

249, 93 S.Ct. 2041. While the Supreme Court explicitly declined to decide "what effect custodial conditions might have on a search authorized solely by an alleged consent," *id.* at 247 n.36, 93 S.Ct. at 2058, our court has agreed with the holding of the Ninth Circuit in United States v. Heimforth, 9 Cir., 493 F.2d 970, cert. denied, 416 U.S. 908, 94 S.Ct. 1615, 40 L.Ed.2d 113 (1974), that *Schneckloth* controls even when the subject is in custody when the consent is sought. Hayes v. Cady, 7 Cir., 500 F.2d 1212, 1214 (1974).

■■ We recognize that since voluntariness is a question of fact, an appellate court should be reluctant to interfere unless there is insubstantial evidence in the record to support the trial court's conclusion. United States v. Sells, 7 Cir., 496 F.2d 912, 913–914 (1974). Nevertheless, our review of the circumstances here convinces us that the trial court erred in finding that consent was given voluntarily.

In the defendant's sworn affidavit accompanying his motion to suppress the evidence of the letters found at his home he stated:

> That Officer Robert Speidel advised me, in order to obtain my consent to search my home, that if I did not give my consent to search my home that he would obtain a search warrant, that he would then break my home residence door down, would then tear the house apart and then would arrest my girl friend, who is now my wife, if I did not give my consent.

Special Agent Ernst, testifying at the suppression hearing, said he did not recall whether Speidel had said that a warrant would be obtained regardless of whether the search waiver was signed and he denied that any threat was made that officers would break down the defendant's door. He did, however, say: "We told him that if he signed the search waiver, that we would not arrest his girl friend." The government presented no witnesses at the hearing and made no argument in support of its contention that the letters were admissible because of the written consent.

At the conclusion of this testimony, the trial court orally stated its findings of fact. It found that the "officers did not say that they would break his door down and that they did not say that they would tear his house apart." While the court viewed the evidence about statements concerning the girl friend as "equivocal," it concluded that "there was apparently assurance that the girl friend would not be arrested if the consent was given." Despite this conclusion, the court declined to suppress the letters seized pursuant to the written waiver.

While Ernst's testimony about the statement concerning arrest of the girl friend is phrased in the language of promise, there is no question that it was in fact an implied threat that if the consent were not signed the woman would be arrested. Defendant's affidavit makes it evident that he understood the statement as a threat. The Supreme Court has held that the Constitution requires that "a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth, supra,* 412 U.S. at 228, 93 S.Ct. at 2048. Where consent is given in response to such an implied threat, the consent cannot be considered voluntary.[5]

We are cognizant of the case of United States v. Culp, 8 Cir., 472 F.2d 459, cert. denied, 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973), in which the Eighth Circuit upheld a consent search although it found that the defendant had refused to cooperate in the search until he was promised that his wife, who had been arrested with him, would be treated leniently. In fact, the court, far from considering the promise evidence of coercion, found it to be evidence that the

consent was voluntarily given. The factual basis for the court's conclusion is somewhat difficult to determine because the opinion states at one point that the evidence demonstrated that defendant "refused to cooperate until he was promised some kind of assistance for his wife," *id.* at 462, and later states that there was overwhelming evidence to support the district court's holding that "the officers had made no improper or coercive promises or threats concerning leniency toward [his] wife." *Id.* at 463. To the extent that the holding in *Culp* may be thought indistinguishable from the instant case, we decline to follow it.

In reviewing the "totality of the circumstances" here, we also consider it significant that the defendant had been arrested and was in custody at the sheriff's office when the waiver was signed. In *Schneckloth, supra,* the Supreme Court recognized that "the techniques of police questioning and the nature of custodial surroundings produce an inherently coercive situation." *Id.* 412 U.S. at 247, 93 S.Ct. at 2058. Other courts have considered the fact of whether there has been an arrest prior to the consent of critical importance in determining voluntariness. *Id.* at 240–241 n.29, 93 S.Ct. 2041; United States v. Heimforth, *supra,* 493 F.2d at 971; United States v. Rothman, 9 Cir., 492 F.2d 1260, 1264 n.1 (1973); Judd v. United States, 89 U.S. App.D.C. 64, 190 F.2d 649, 651 (1951). *Cf.* Boyd v. Adams, 7 Cir., 513 F.2d 83 at 87–88 (1975).

In view of the fact that the defendant signed the consent form while undergoing custodial interrogation and only after he had been impliedly threatened that his girl friend would be arrest-

---

5. At oral argument the government contended that the statement about the girl friend was not coercive because the police had no grounds to arrest the woman. While we fail to understand how this fact could make the statement any less coercive, the police had clearly given the defendant the impression that they would have had grounds to arrest the girl friend. The defendant had told police that the woman was at his home and the police told the defendant that they wanted to go to his

house to look for drugs. Defendant might reasonably have concluded that if the police found drugs in his home and found his girl friend there, they would have had probable cause to arrest her for possession of narcotics. Testimony at an earlier suppression hearing revealed that the search of the house did in fact result in the seizure of narcotics, but evidence of these drugs was not introduced at trial.

ed if he did not sign, we hold that the consent was involuntary and therefore invalid. Since the government at no time in these proceedings has argued that its search was supported by probable cause and a warrant[6] or any recognized exception to the warrant requirement, there remains no other ground on which the search may be upheld. The three letters from South America obtained at the defendant's home were thus seized in violation of the Fourth Amendment and it was error to deny the defendant's motion to suppress their use as evidence. The letters were clearly damaging to the defendant, particularly since they bore on the question of the defendant's knowledge, the only contested issue in the trial. Under these circumstances we cannot say that the error was harmless beyond a reasonable doubt. Bumper v. North Carolina, *supra*, 391 U.S. at 550, 88 S.Ct. 1788; Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The conviction must be reversed and the case remanded for a new trial.

Reversed and remanded.

6. A search warrant for the house, signed by a state court judge, had been obtained in expectation that the letter containing the cocaine would be delivered to the defendant's home. Since the letter was instead picked up at the post office, the warrant was never used.